# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| WAYNE DOUGLAS COBB, as Co-Administrator of the Estate of Jennifer Autumn Cobb, deceased, and SUSAN MOON COBB, as Co-Administrator of the Estate of Jennifer Autumn Cobb,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JEREMY GREEN, a/k/a Bob Green, and YOUNG MEN'S CHRISTIAN ASSOCIATION OF GEORGIA'S PIEDMONT, INC.,<br><br>　　　　Defendants. | CIVIL ACTION FILE 2:23-CV-130-SCJ<br><br>JURY TRIAL DEMANDED |

### Plaintiffs Wayne Cobb and Susan Cobb's Opposition to Defendant Jeremy Green's Motion To Dismiss

**DEITCH & ROGERS, LLC**
*Gilbert H. Deitch*
Georgia Bar No. 216400
*Andrew T. Rogers*
Georgia Bar No. 007010
*Kara E. Phillips*
Georgia Bar No. 379670
*W. Michael D'Antignac*
Georgia Bar No. 205714

**BONDURANT, MIXSON & ELMORE, LLP**
*Naveen Ramachandrappa*
Georgia Bar No. 422036
*E. Allen Page*
Georgia Bar No. 640163

**CATHEY & STRAIN, LLC**
*Dennis T. Cathey*
Georgia Bar No. 116600
*Matthew A. Cathey*
Georgia Bar No. 532981

**Table Of Contents**

Introduction & Background ..................................................................1

Legal Standard ..................................................................................4

Argument..........................................................................................5

1. As the administrators of Jennifer's estate, the Cobbs have the
   legal capacity to bring this action........................................................5

   A. The First Amended Complaint answers any alleged
      defects regarding the Cobbs' legal capacity. ............................5

   B. The Complaint also properly alleged Mr. Cobb's legal
      capacity to bring this action. ....................................................7

2. The Cobbs properly state a claim against Green and YMCA
   Piedmont for breach of fiduciary duty. .................................................9

3. The Cobbs properly state claims against Green for violations of
   Marsha's Law. ..................................................................................15

   A. The Cobbs properly allege that Green committed sex
      crimes before Jennifer turned sixteen years old......................16

   B. The Cobbs properly allege that Green and Jennifer sent
      "sexually explicit" images to each other..................................17

   C. The Cobbs properly allege that Green knowingly
      received or distributed "child pornography." ..........................19

4. If the Court believes any further amendment is needed, the
   Cobbs expressly request the right to further amend...........................19

Conclusion .......................................................................................20

## Introduction & Background

Plaintiffs Wayne Cobb and Susan Cobb (the "Cobbs") bring this civil action against Defendants Jeremy Green ("Green") and the Young Men's Christian Association of Georgia's Piedmont, Inc. ("YMCA Piedmont") seeking damages for childhood sexual abuse against their daughter, Jennifer Cobb ("Jennifer").

In fall 2012, eleven-year-old Jennifer joined the "Twisters" program, which was a junior girls gymnastics team run by YMCA Piedmont in Hartwell, Georgia. 1st Am. Compl. [Doc. 23] ¶¶ 30, 17. At that time, Green was a twenty-seven-year-old YMCA Piedmont employee and a Twisters' coach, with direct responsibility for the instruction and safety of the young girls on the Twisters team. *Id.* ¶¶ 27-28.

After Jennifer joined the Twisters, she quickly became one of their most talented gymnasts, and Green dedicated special attention to Jennifer. *Id.* ¶¶ 30-31. Soon, Jennifer and the Cobbs "believed that Green had a special relationship with Jennifer, and that Green would be taking care of and protecting Jennifer." *Id.* ¶ 31. Jennifer and the Cobbs were also "deeply religious," and because they believed in YMCA Piedmont's promise of a Christian mission, they put their faith and trust in Green and YMCA Piedmont to protect Jennifer. *Id.* ¶¶ 24-25.

However, Green and YMCA Piedmont abused that sacred trust in the most profound and horrifying way possible. Through the extensive and unfettered access

to Jennifer provided by YMCA Piedmont, Green began grooming Jennifer. *Id.* ¶ 34. Over a period of many years, and with YMCA Piedmont turning a blind eye, Green inappropriately kissed and fondled Jennifer (at age 11) at YMCA Piedmont events, then escalated to overt sexual acts such as oral sex with Jennifer (at age 12), and ultimately to raping Jennifer (at age 14). *Id.* ¶¶ 38, 41-42, 47-48. Green then continued to abuse Jennifer for years afterwards as well. *Id.* ¶¶ 49-57.

The consequences of Green's grooming and childhood sexual abuse of Jennifer were, as one would expect, severe, traumatic, and life-altering. *Id.* ¶¶ 80-87. Jennifer was only able to speak out against Green, when after she had turned eighteen years old, Jennifer discovered inappropriate messages between Green and another girl, a minor like Jennifer had been. *Id.* ¶ 5. Realizing that Green posed a threat to other children, Jennifer finally broke free from Green. *Id.*

Jennifer went to the police, Green was arrested, and Green was indicted for sex crimes he committed against Jennifer, including Child Molestation, Aggravated Child Molestation, Statutory Rape, Enticing a Child for Indecent Purposes, and Sexual Exploitation of cChildren. *See* Indictment [Doc. 23-2]. But, by that point, the damage was too severe. On June 30, 2021, six days after testifying against Green's request to be released on bond (which was granted over Jennifer's objection), Jennifer was found dead hanging in her shower. 1st Am. Compl. [Doc. 23] ¶ 7.

On June 30, 2023, Wayne Cobb filed a Complaint "on behalf of his deceased daughter Jennifer Cobb for her personal injuries" against Green and YMCA Piedmont. Compl. [Doc. 1] ¶ 1. On August 3, 2023, Green filed a motion to dismiss for lack of standing and failure to state a claim. *See* Green's Mot. to Dismiss [Doc. 12]. On August 10, 2023, YMCA Piedmont also filed a motion to dismiss that "adopts and incorporates the lack of standing arguments asserted by Defendant Green." YMCA Piedmont's Br. in Supp. of Mot. to Dismiss [Doc. 16-1] at 8 n.1. And on August 31, 2023 (the same day that this brief is being filed), Wayne Cobb and Susan Cobb[1] filed a First Amended Complaint. *See* 1st Am. Compl. [Doc. 23].

As set forth in this brief, the Court should deny Green's motion to dismiss. While Green's motion fails even as to the original Complaint, the First Amended Complaint makes this Court's decision an easy one. The First Amended Complaint conclusively addresses each of the alleged defects raised by Green. Thus, while the

---

[1] Pursuant to Rule 15 (a)(1)(B), and this Court's order extending the deadline for filing without leave, Plaintiffs have the right to add Mrs. Cobb as a Plaintiff without leave or an order from this Court. *See, e.g.*, *U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1019 (10th Cir. 1994) ("'A motion to add a party is governed by Fed.R.Civ.P. 15(a),'" and, thus, "plaintiffs were entitled to the amendment as a matter of right."); *Parlante v. Passalacqua*, No. 07-CV-00233, 2008 WL 11399498, at *6 (D. Nev. Mar. 7, 2008) ("[T]his court ... is of the view that Rule 15(a) controls amendment of pleadings by right even if the amendment adds a party."); Order [Doc. 15] at 1. However, out of an abundance of caution, Plaintiffs are also separately filing a motion for leave to add Mrs. Cobb as a Plaintiff.

Court could deny Green's motion even based on the original Complaint, the Court can and should easily deny Green's motion based on the First Amended Complaint, without needing to decide whether the original Complaint was sufficient.

## Legal Standard

The Court "must accept all factual allegations in the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021).

Thus, "'[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting 5 Fed. Prac. & Proc. § 1356). A court should not dismiss a complaint because it believes "the [claimant] will fail to find evidentiary support." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). A claim need only be "plausible," and Rule 8 requires only "a short and plain statement." *Id.* at 573; Fed. R. Civ. P. 8 (a)(2). Even "extravagantly fanciful" allegations are entitled to "the presumption of truth," and even if "it strikes a savvy judge that actual proof … is improbable," "a well-pleaded complaint may proceed." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009); *Twombly*, 550 U.S. at 556.

The Court must also "read the complaint as a whole." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005). Thus, "a

formulaic misstep by counsel is not fatal," and a pleading is judged "by the quality of its substance rather than according to its form or label and, if possible, it will be construed to give effect to all its averments." *Id.*; *see Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1383 (11th Cir. 2010) ("[r]eading Speaker's Amended Complaint as a whole" and rejecting the CDC's arguments because it "reads the Amended Complaint far too narrowly").

## <u>Argument</u>

**1.     As the administrators of Jennifer's estate, the Cobbs have the legal capacity to bring this action.**

### A.     The First Amended Complaint answers any alleged defects regarding the Cobbs' legal capacity.

In Green's motion to dismiss, he first argues that "[t]he claims asserted by Plaintiff belong to the Estate of Jennifer Cobb" and that the Complaint did not specifically plead that Mr. Cobb's appointment as administrator was imminent. Green's Br. in Supp. of Mot. to Dismiss [Doc. 12-1] at 5 (formatting altered).

But, even if that had been a sufficient basis for dismissal of the Complaint, the First Amended Complaint conclusively addresses any alleged defect. In the First Amended Complaint, the Cobbs specifically plead that they filed a petition for appointment as administrators of Jennifer's estate on June 30, 2023 in the Probate Court of Hart County, Georgia; that the Probate Court granted their petition on

August 15, 2023; and that the Cobbs bring this action as co-administrators of Jennifer's estate. *See* 1st Am. Compl. [Doc. 23] ¶¶ 8-9. The Cobbs have also attached to the First Amended Complaint a copy of the Probate Court's order and letters of administration. *See* Doc. 23-1. Thus, the First Amended Complaint answers any alleged defects regarding the Cobbs' legal capacity. As administrators of Jennifer's estate, the Cobbs have authority to bring this action. *See, e.g.*, O.C.G.A. § 53-7-1.

And while Green raises no issue of relation-back and, thus, the Court need not resolve any question of relation-back, the First Amended Complaint does, in fact, relate back to the date of the original Complaint. As Rule 15 provides, "[a]n amendment to a pleading relates back to the date of the original pleading when" "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15 (c)(1)(B); *see* O.C.G.A. § 9-11-15 (c) (same).[2]

Here, the amendments made by the First Amended Complaint all arise out of the same conduct, transaction, or occurrence set out in the original Complaint. The First Amended Complaint does not add any new conduct, transaction, or

---

[2] Rule 15 (c)(1)(A) provides that federal courts may also apply a state's relation-back rules for any state law claims. *See* Fed. R. Civ. P. 15 (c)(1)(A) ("An amendment to a pleading relates back to the date of the original pleading when" "the law that provides the applicable statute of limitations allows relation back[.]").

occurrence—it merely adds allegations about the Cobbs' legal capacity and further specificity to claims already asserted. Thus, the First Amended Complaint relates back to the date of the original Complaint.

### B.    The Complaint also properly alleged Mr. Cobb's legal capacity to bring this action.

Again, to be clear, this Court need not decide whether the original Complaint properly alleged Mr. Cobb's legal capacity to bring this action. The First Amended Complaint conclusively addresses any alleged defect. But even if the Court did need to decide that question, the Complaint was not subject to dismissal based on Green's argument that Mr. Cobb lacked legal capacity to bring this action.

As an initial matter, whether a person can bring an action on behalf of an estate is *not* a question of constitutional standing. As the Eleventh Circuit clearly held in *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666 (11th Cir. 1991),[3] whether a person can bring claims on behalf of an estate is a question of *capacity*:

> The question in this case is whether Howard Glickstein is able to bring this case on behalf of the estate. **This is not a question of standing**; rather, this issue involves the question of whether Glickstein has the capacity to bring this action on behalf of the estate. As Wright & Miller note, **the doctrine of capacity is often incorrectly considered under the rubric of a standing claim**.

---

[3] *Glickstein* was later abrogated on grounds not related to this specific holding. *See Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001).

*Id.* at 670 (emphasis added).

That this question is one of capacity only—not jurisdiction—matters because Rule 9 provides that, "[e]xcept when required to show that the court has jurisdiction, a pleading need not allege" "a party's capacity to sue or be sued." Fed. R. Civ. P. 9 (a)(1)(A). "To raise [that issue], a party must do so by a **specific denial**, which must state any **supporting facts** that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9 (a)(2) (emphasis added).

Here, Green's motion does not provide a specific denial nor provide any supporting facts that are peculiarly within Green's knowledge. *See id.* And even if Green's motion had done those things, at most that "creates an issue of fact." *Am. Postal Workers Union, AFL-CIO, Philadelphia, PA Area Local v. USPS*, 222 F. Supp. 2d 675, 682-83 (E.D. Pa. 2002). Thus, even the original Complaint was not subject to dismissal as a matter of law based on Green's argument.

Moreover, Mr. Cobb did have legal capacity to file the original Complaint. True, Mr. Cobb filed the Complaint on June 30, 2023, and his appointment as administrator was not granted until August 15, 2023. But Georgia Code Section 53-7-1 provides that "[t]he duties and powers of the personal representative commence upon qualification" and "[s]uch powers relate back to give acts performed by the personal representation prior to qualification that are beneficial to the estate **the**

**same effect** as those acts performed after qualification." O.C.G.A. § 53-7-1 (a) (emphasis added); *see* Fed. R. Civ. P. 17 (b) (providing that Georgia law governs capacity). Thus, by operation of law, Mr. Cobb had the legal capacity to file the Complaint, since his appointment as an administrator operates retroactively.[4]

## 2. The Cobbs properly state a claim against Green and YMCA Piedmont for breach of fiduciary duty.

Green's second argument in his motion to dismiss is that "Plaintiff's claim for breach of fiduciary duties must be dismissed, because there [was] no fiduciary relationship ... between Jennifer Cobb and Defendant Green." Green's Br. in Supp. of Mot. to Dismiss [Doc. 12-1] at 8. Green does not object to the plausibility of the Cobbs' factual allegations. Instead, Green argues that, as a matter of law, "Georgia does not recognize a fiduciary duty between a coach and an athlete." *Id.* at 10.

But a fiduciary relationship "may be created by law, contract, **or the facts of a particular case**." *AgSouth Farm Credit, ACA v. West*, 835 S.E.2d 730, 735 (Ga. App. 2019) (emphasis added). In other words, while Georgia law does not provide that *every* coach-athlete relationship is a fiduciary relationship, the facts of a particular case may still establish a fiduciary relationship. If the particular facts show that "one party is so situated as to exercise a controlling influence over the will,

---

[4] To the extent that Mrs. Cobb's approval were needed, she has ratified all acts taken by Mr. Cobb. *See* 1st Am. Compl. [Doc. 23] ¶ 10.

conduct, and interest of another," "the law requires the utmost good faith" and fiduciary relationship is established. *Id.* And "the existence of this relationship is generally a factual matter for the jury to resolve." *Id.*

Here, the Cobbs allege facts from which a jury could find that a fiduciary relationship existed between Jennifer and Green (as well as the YMCA) given the circumstances of this case. Among other things, the Cobbs allege that "YMCA Piedmont knows that parents, including parents like the Cobbs, rely on the fact that YMCA Piedmont promotes a Christian mission and Christianity is an integral part of all its programs, including its gymnastics program." 1st Am. Compl. [Doc. 23] ¶ 23. "The Cobbs absolutely believed and put a lot of weight into the fact that YMCA Piedmont is a Christian organization," and that is "why they entrusted YMCA Piedmont with the care of their children, even from very young ages." *Id.* ¶ 24. Both Jennifer and her entire family were "deeply religious." *Id.* ¶ 25.

Moreover, the Cobbs allege that, "[i]n his role as an employee, representative, and agent of YMCA Piedmont, Green was tasked with promoting and did promote YMCA Piedmont's Christian mission, regardless of whether he did so explicitly or implicitly." *Id.* ¶ 27. Indeed, "Green positioned himself as a trusted coach and friend of the Cobb family, including Jennifer's parents Susan and Wayne Cobb." *Id.* ¶ 35.

In addition to the fact that the YMCA's Christian mission caused the Cobbs

and Jennifer to put their faith into YMCA Piedmont and Green, the extra and special attention that Green and other coaches paid to Jennifer further cemented their special relationship. *Id.* ¶¶ 31, 65. The Cobbs allege that "Green spent more time with Jennifer than other gymnasts, and Jennifer in turn spent more time with Green than she would have with a normal coach or teacher." *Id.* ¶ 31. "The Cobbs similarly understood and believed that Green had a special relationship with Jennifer, and that Green would be taking care of and protecting Jennifer." *Id.*

The fact that Green was the *only* male Twisters coach also demonstrated and confirmed the special trust that Jennifer and the Cobbs put into Green. As the Cobbs allege, "[b]ecause of Green's role as the sole male coach of the Twisters, other YMCA Piedmont coaches held him out as being especially safe for Jennifer, both in terms of his ability to train and hold Jennifer during gymnastics stunts, and to serve as potential protection during overnight lock-in events." *Id.* ¶ 66. "In particular, the Twisters coaches told Jennifer and her parents that they did not need to worry about Jennifer at the lock-ins, and that they would lock the doors and keep the children safe." *Id.* "The coaches further believed and communicated that having Green, a male, present at the lock-ins meant the gymnasts would be even more safe." *Id.*

In other words, there was a fiduciary relationship between Jennifer and Green (as well as the YMCA) not merely because Green was a coach and Jennifer was his

athlete. Rather, the unique combination of circumstances—a twelve-year-old girl, who herself is deeply religious and comes from a deeply religious family, is entrusted to a non-profit that promotes itself as a Christian organization and to a singular male coach who lavishes attention and praise on his star gymnast—is what would allow a jury to find that a fiduciary relationship existed.

Given those well-pled factual allegations, none of the Georgia cases cited by Green involve even remotely similar facts. Indeed, they do not even address a student/athlete relationship at all. *See, e.g.*, *McCall v. Williams*, 756 S.E.2d 217, 219 (Ga. App. 2014) (noting that "'mere kinship by blood does not create such a relation'" and relying on evidence that "[McCall's] relationship with Williams was 'rocky' and another of the plaintiffs stated that he was 'never around him that much'"); *Arko v. Cirou*, 700 S.E.2d 604, 607-08 (Ga. App. 2010) (although Cirou was Arko's friend, "Arko was undisputedly an experienced businessman who had engaged in sophisticated business transactions previously").

And while the federal cases cited by Green do at least involve a student-athlete relationship, Green's cited cases involve *college* (or about to join college) students and do not involve any particular or specific allegations unique to the plaintiff. *See, e.g.*, *Powell v. Seton Hall Univ.*, No. 21-CV-13709, 2022 WL 1224959, at *7 (D.N.J. Apr. 26, 2022) ("a **<u>university</u>** or coach and a student-athlete"); *Eppley v. Univ. of*

*Del.*, No. 13-CV-99, 2015 WL 156754, at *4 (D. Del. Jan. 12, 2015) ("Coach Miller

made the promise [of a scholarship] to induce Ms. Eppley to attend the **University**

of Delaware."); *Knelman v. Middlebury Coll.*, 570 F. App'x 66, 68 (2d Cir. 2014)

("[a] fiduciary relationship between a **college** and its students"); *Morton v. Park*

*Christian Sch., Inc.*, No. 19-CV-0313, 2022 WL 4803102, at *17 (D. Minn. Oct. 3,

2022) ("Nor does [Morton] address the various considerations necessary to

identifying the presence of a de facto fiduciary relationship. The **lack of meaningful**

**argument** ... alone warrants ... summary judgment ....") (emphasis added in all).

Rather than rely on Green's easily distinguished cases, the Court should look

to more factually similar and analogous cases where courts have held that, based on

special circumstances like those here, a jury could find a fiduciary relationship.

For example, consider the "[f]our key facts" on which a federal district court

in Idaho relied to find a jury issue on whether there was a fiduciary relationship

between a twelve-year-old boy scout and his scout master:

> Four key facts operate in Doe's favor: (1) he was a **minor child** when
> he was allegedly abused by Arnold; (2) he was an **active and regular**
> **participant in camping trips and other activities** provided through a
> Church-sponsored organization; (3) he was **strongly encouraged by**
> **the Church to participate** in those camping trips and activities; and
> (4) **the Church allegedly knew of the specific danger** that Arnold
> posed. Also, **the Church taught Doe to respect and trust his Church**
> **and Scout youth leaders**. And presumably, Doe's parents trusted
> Arnold enough, in his role as a Church and Scout leader, to allow him
> to take Doe on overnight camping trips and individual day trips. On

> these scouting trips, Doe's parents entrusted Arnold to ensure Doe's
> safety and act as his caretaker.

*Doe v. Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints*, No. 09-CV-00351, 2012 WL 3782454, at *10 (D. Idaho Aug. 31, 2012) (emphasis added). Those same or similar four key facts are alleged here.

Of course, there are many other cases involving reliance on those particularized facts like those alleged here. *See, e.g.*, *Fortin v. The Roman Catholic Bishop of Portland*, 871 A.2d 1208, 1219-20 (Me. 2005) ("Fortin's assertion of a **particularized** involvement in the activities of the church as both a parochial school student and an altar boy distinguishes his status from that of a general member of the Diocese."); *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 429 (2d Cir. 1999) ("Martinelli had, and the Diocese knew he had, a special and privileged relationship with Father Brett ... as a member of 'Brett's Mavericks,' **the small group of boys** interested in liturgical reform in the Catholic Church to whom Brett acted as a mentor and spiritual advisor.") (emphasis added in both).

And *Fortini* and *Martinelli* are particularly important persuasive authority, given that the Georgia Supreme Court has specifically and favorably cited both cases. *See Doe v. Saint Joseph's Catholic Church*, 870 S.E.2d 365, 372-73 (Ga. 2022) (citing "*Martinelli*" and "*Fortin*" to support the statement that "courts in other jurisdictions applying similar standards for establishing confidential relationships").

In sum, the particularized facts alleged here establish a claim against Green and YMCA Piedmont for breach of fiduciary duty. The Cobbs have not and do not rely merely on a coach-athlete relationship.

**3.     The Cobbs properly state claims against Green for violations of Marsha's Law.**

In Count One of their Complaint and Amended Complaint, the Cobbs state a claim against Green for several violations of Marsha's law, which permits a minor victim of sex abuse to recover damages when certain criteria are met. *See* 1st Am. Compl. [Doc. 23] ¶¶ 102-07; 18 U.S.C. § 2255.

Specifically, the Cobbs allege that Green used a cell phone and internet-based apps to make calls and send messages to knowingly persuade Jennifer, a minor child, to engage in sexual activity in violation of 18 U.S.C. § 2422 (b), *see* 1st Am. Compl. [Doc. 23] ¶ 103; Green knowingly crossed state lines for the purpose of engaging in illegal sexual conduct with Jennifer, a minor child, in violation of 18 U.S.C. § 2423 (b), *see id.* ¶ 104; and Green used a cell phone and internet-based apps to make calls and send messages to knowingly persuade Jennifer, a minor child, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, including transmission of such child pornography across state lines, in violation of 18 U.S.C. §§ 2251 (a), 2252A (a)(2), *see id.* ¶ 105.

In his motion to dismiss, Green makes three challenges to these claims for violations of Marsha's law. Each of Green's three challenges fail.

### A.    The Cobbs properly allege that Green committed sex crimes before Jennifer turned sixteen years old.

First, Green argues that "the age of consent in Georgia" is sixteen years old and that "it is impossible to tell if any underage sexual activity is even alleged" because the original Complaint alleges "acts occurred between 2012 and 2018," while "Jennifer turned 16 on January 18, 2017." Green's Br. in Supp. of Mot. to Dismiss [Doc. 12-1] at 13. In other words, Green claims that there is no way to tell if the original Complaint alleges sexual activity before January 18, 2017.

Accepting for the moment Green's contention that only sexual activity that occurred before Jennifer turned sixteen years old could support a violation of Marsha's law, the Cobbs' First Amended Complaint conclusively addresses this alleged defect. In the First Amended Complaint, the Cobbs now expressly pled their violations of Marsha's law based on "numerous occasions beginning in 2012 and before Jennifer's sixteenth birthday on January 18, 2017."  1st Am. Compl. [Doc. 23] ¶¶ 103-05. That allegation is entirely consistent and supported by the State of Georgia's Indictment of Green, which similarly indicts Green for acts that occurred before Jennifer's sixteenth birthday on January 18, 2017. Indictment [Doc. 23-2].

Moreover, even the original Complaint alleged that Green committed several sex crimes before Jennifer turned sixteen years old. *See, e.g.*, Compl. [Doc. 1] ¶ 34 ("On or about July 24, 2015, when Jennifer was 14 years old and Green was 30 years old, Green returned from Fort Bragg in North Carolina, to Hartwell, Georgia, to engage in sexual activity. .... He took her to a field nearby and raped her.").[5] Thus, even if the original Complaint also alleged sex crimes after Jennifer turned sixteen years old, that does not make it "impossible" to understand that at least some of the sex crimes occurred before Jennifer turned sixteen years old.

### B.    The Cobbs properly allege that Green and Jennifer sent "sexually explicit" images to each other.

Second, Green argues that the original Complaint "fails to describe any images which meet the requirement that [the photos] depict 'sexually explicit conduct' which for purposes of the Chapter include ... lascivious exhibition of the anus, genitals, or pubic area of any person." Green's Br. in Supp. of Mot. to Dismiss [Doc. 12-1] at 14. In other words, Green claims that a pleading must specially allege the detail of sexually explicit images to state a claim.

Accepting for the moment Green's contention that there is a special pleading requirement for sexually explicit images, the Cobbs' First Amended Complaint

---

[5] The First Amended Complaint contains the same allegation. *See, e.g.*, 1st Am. Compl. [Doc. 23] ¶ 48.

conclusively addresses this alleged defect. In the First Amended Complaint, the Cobbs expressly allege that, "at some point in 2013, Green sent **nude photographs of his penis** to Jennifer via messaging apps." 1st Am. Compl. [Doc. 23] ¶ 45 (emphasis added). "Green solicited Jennifer to send him sexually explicit photographs in return, and Jennifer sent Green **photographs of her breasts and vagina** via messaging apps." *Id.* (emphasis added).

These allegations are entirely consistent and supported by the State of Georgia's Indictment of Green, which similarly indicts Green because "'[he] did knowingly persuade and entice Jennifer Cobb, a child under sixteen years of age, to engage in sexually explicit conduct, specifically said accused did request Jennifer Cobb to produce and disseminate to the accused a visual medium depicting a lewd exhibition of **the genitals of said child**.'" *Id.* ¶ 95 (emphasis added).

Moreover, even the original Complaint, read as a whole and under the liberal notice pleading standard, alleged a plausibility that the photographs were sexually explicit. Among other things, the Complaint alleges that, "in 2013, when Jennifer was 12 years old," Green "began to engage in sexual acts such as placing his mouth on Jennifer's genitals and asking her to place her mouth on his genitals." Compl. [Doc. 1] ¶ 33. Also, "[o]n or about November 24, 2015," "Green digitally penetrated Jennifer's vagina with his fingers," while "in the Cobb family's living room." *Id.* ¶

36. Drawing all inferences in favor of the pleader, it is a fair inference that, when Green was "soliciting sexual images from Jennifer and sending sexual images to Jennifer," *id.* ¶ 31, the photos displayed Jennifer's anus, genital area, or pubic area. The kind of person who engaged in oral sex with a twelve-year-old is the kind of person who would solicit sexually explicit images—or at least a jury, and not any court, must decide whether to draw that inference. In any event, as stated, the First Amended Complaint conclusively addresses the alleged defect.

### C.    The Cobbs properly allege that Green knowingly received or distributed "child pornography."

Third, Green argues that "child pornography" is defined as "sexually explicit conduct," and thus, for the same reason as his second argument, Green says that any claim that he knowingly received or distributed child pornography must fail. Green's Br. in Supp. of Mot. to Dismiss [Doc. 12-1] at 15.

But, as set forth in the immediately preceding subsection, *see supra* Argument § 3.B., the First Amended Complaint conclusively addresses this alleged defect by expressly alleging the details of the sexually explicit photographs sent between Green and Jennifer. And, properly construed, the original Complaint also alleged that the photographs were sexually explicit.

### 4.    If the Court believes any further amendment is needed, the Cobbs expressly request the right to further amend.

Because the First Amended Complaint conclusively addresses the alleged defects raised by Green, there is no basis or need to grant Green's alternative request for a more definite statement. However, if the Court were to believe that any further amendment is needed—either in order to state a claim or to provide a more definite statement—the Cobbs expressly request the right to further amend.

## **<u>Conclusion</u>**

For those reasons, this Court should deny Green's motion to dismiss.

Signature and certificate pages follow.

This brief is submitted on August 31, 2023.

**/s/ Naveen Ramachandrappa**

GILBERT H. DEITCH
Georgia Bar No. 216400
ANDREW T. ROGERS
Georgia Bar No. 007010
KARA E. PHILLIPS
Georgia Bar No. 379670
W. MICHAEL D'ANTIGNAC
Georgia Bar No. 205714
**DEITCH & ROGERS, LLC**
1189 S. Ponce de Leon Ave. NE
Atlanta, Georgia 30306
Tel: 770-394-9000
gil@victimattorneys.com
andy@victimattorneys.com
kara@victimattorneys.com
michael@victimattorneys.com

NAVEEN RAMACHANDRAPPA
Georgia Bar No. 422036
E. ALLEN PAGE
Georgia Bar No. 640163
**BONDURANT MIXSON
& ELMORE LLP**
1201 W. Peachtree Street NW
Suite 3900
Atlanta, Georgia 30309
Tel: 404-881-4100
ramachandrappa@bmelaw.com
page@bmelaw.com

DENNIS T. CATHEY
Georgia Bar No. 116600
MATTHEW A. CATHEY
Georgia Bar No. 532981
**CATHEY & STRAIN, LLC**
649 Irvin Street
Cornelia, Georgia 30531-3267
Tel: 706-408-8546
DCathey@catheyandstrain.com
MCathey@catheyandstrain.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that **Plaintiffs Wayne Cobb and Susan Cobb's Opposition to Defendant Jeremy Green's Motion To Dismiss** has been prepared with Times New Roman, 14-point font, which is one of the font and point selections approved by the Court in LR 5.1B.

**/s/ Naveen Ramachandrappa**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 31, 2023, I filed **Plaintiffs Wayne Cobb and Susan Cobb's Opposition to Defendant Jeremy Green's Motion To Dismiss** using the CM/ECF filing system, which will automatically serve by electronic service the following counsel of record:

*Attorney for Defendant*
*Jeremy Green*

William Brent Ney
Ney Rhein Williams, LLC
265 South Culver St
Lawrenceville, GA 30046
Tel: 404-842-7232
william@neyrhein.com

*Attorney for Defendant*
*Young Men's Christian Association of Georgia's Piedmont Inc.*

Brynda Rodriguez Insley
Jennifer Clark
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Cir, Ste 200
Atlanta, Georgia 30339
Tel: 770-434-6868
binsley@taylorenglish.com
jclark@taylorenglish.com

**/s/ Naveen Ramachandrappa**

Certificate of Service Page